May it please the court, my name is Henry Posada, and I represent the petitioner Santos Ronald Baca in his petition for review before this court. Mr. Baca is a citizen of Nicaragua. Like many, he came to this country seeking a better life. The Nicaraguan Adjustment and Central American Relief Act, commonly known as NACARA, was intended to protect and provide individuals like Mr. Baca that opportunity by giving them an avenue of legalization. Well, let's talk about what's really at issue here, and that's the commencement of his presence, right? That's right, Your Honor. All right. And I think that we asked for supplemental briefing on Hacopian and Sinopean. But from the standpoint, isn't it true that unlike the petitioners in Hacopian and Sinopean, Mr. Baca knew that he could not rely on the notice to appear to prove the commencement of his presence? It just seems like out the gate. They said, you've got to put some documents in to show when you got here, and whereas the petitioners in the other case weren't put on notice of that. Well, Your Honor, we've never really agreed with the interpretation of the regulations as necessarily requiring government-issued documents. 245.13e3. Okay. When you say you've never agreed with a regulation that's a law, how does that help us? Well, we think it's a permissive regulation. We think that the use of the word may instead of the use of the word must means that an alien can prove his commencement and the physical presence through this series of government-issued documents, but need not necessarily rely on government-issued documents to prove that. The regulations could have used the word must, but it uses the word may. So that's been our whole point, that to the extent that the regulation is illustrative and not exhaustive, an alien can certainly come to court expecting that they can prove the commencement of their physical presence through testimony, secondary evidence such as affidavits, receipts, employment letters, and things of that nature. So it all depends on how you read this regulation, whether you read it as being permissive or whether you take a restrictive reading that would appear to require in the disjunctive a series of government- that the alien has to prove their commencement of presence. That's not permissive, is it? I'm sorry? What you're saying is permissive is how they prove it, but you're not saying that proving commencement of presence is permissive, are you? No, it's required that they prove the commencement of their physical presence. The question is whether they have to prove that solely by issuance or presentation of government-issued documents. And we think the regulation is permissive whether they have to present government documents or whether they can present any secondary evidence or testimony. So what is the effect of a judicial admission in this context? In a civil litigation, it is evidence. Right. Pursuant to Hacopian v. Mukasey and Sanapian v. Holder, the NTA alleged an entry date that was prior to December 1st of 1995, which is the triggering date. Once Mr. Baca admitted that allegation and the court found removability based on that, it was an undisputed fact. So it's almost like we're talking through both sides of the face. But when the first meeting that he went to, and he was initially denied asylum, they kicked it over to court to say, hey, you need to prove when you got here, right? I mean, he's put on notice at that point. Correct. It was actually an adjustment application that was denied and referred to the court. But, yes, it was denied for failure to prove physical presence or the commencement of physical presence with some sort of government-issued documents, which he doesn't have, and he's never had them, and he's probably not going to have them. So we think that this case is like Hacopian and Sanapian because we think that the regulation is permissive. It doesn't necessarily require that the only way you can prove commencements is through government documents. And when you think of the remedial purpose behind NACARA, which is to protect people like Mr. Baca who come from war-ravaged countries, as this Court has recognized, the protection to stay here if they've been here before December. But isn't the purpose also to protect a certain group of people? Not everyone that's from Guatemala, right? Nicaragua. Nicaragua. Not everyone. Well, right. They have to be in a certain time period, right? Right. And Mr. Baca meets that requirement. He comes within the class of Section 202 NACARA for people from Nicaragua. It's a pretty generous legalization program. If you've been here since December 1st and you've continued to be here, you're eligible, unless you're otherwise inadmissible. He meets that, except he can't prove it with tax returns that were filed or some other form, perhaps a California I.D. or a license or something like that. He's got witnesses. He came to court with witnesses. He came ready to testify on his own behalf. I believe the regulations allow for that. And the judge didn't let him testify. The judge said no. She pre-permitted the application. And in doing so, she denied him a full and fair hearing. He didn't get his day in court. If the regulation, and another reason why we believe a remand is warranted, if we read the regulation restrictively to require use of government documents to prove the commencement of physical presence, then we believe that that regulation would be ultra-virus of the statute because we don't believe the statute necessarily requires that an alien demonstrate eligibility or prove physical presence necessarily by the use of documents. The statute just says you have to demonstrate that you are here. These are some ways to do it or through regulations as the Attorney General might implement. Finally, Your Honor, to the extent that the regulation is interpreted to require government documents to prove commencement, we think the regulation violates equal protection. We think the regulation is arbitrary and capricious because it discriminates against Nicaraguans who are part of the class. That is, they were here on or before December 1st of 1995, but they're unfortunate in not having any government-issued documents. We think that there's no rational basis why this would be true. Perhaps there might be a motive to prevent fraud in attempting to qualify for relief, but when you go to the section of the reg that set forth requirements for the continuity of the physical presence, it seems that any type of secondary evidence is admissible to prove continuity. And we all know that continuity documents can be falsified, altered, so I don't think fraud prevention is an adequate motivation for this discriminatory regulation. Well, you say that isn't even rational. I would admit that there's some problem there, but it's hard for me to conceive that requiring these documents is irrational. I mean, not enough to explain why a decision-maker would implement such a regulation. Well, I don't personally understand it because if fraud is the goal, then you would seem to require that across the board for all sorts of evidence, not just what you use to prove when your physical presence commenced, but what you use to prove the continuity of the physical presence. But, of course, the probability that you continued to be here rises if we know when you got here. Well, but there's also instances... And what kind of document, by the way, would you have that would show continuous presence? Let's suppose you get a five-year driver's license in year one. Pay stubs, Your Honor, rent receipts, rental agreements, bills, cell phone bills, affidavits from witnesses, and there's the people that can come to court and testify that they've known you from their firsthand knowledge. There's all sorts of documents, correspondence, tax returns, W-2 forms. There's all sorts of documents that can be issued. Theoretically, I would agree. Everything from government documents to nongovernment-issued documents. So, of course, theoretically, your client could have had them. I'm sorry, Your Honor? Your client could have had them if he was paying rather than... Well, he did present 86 pages' worth of documents. They just weren't government-issued documents. He didn't file his first tax return until the year 2000. Everything before that was secondary evidence, affidavits, employment letters, rent receipts, things of that nature. We don't think that the record... That takes me back to my question about the government-issued document. If you get a driver's license in year one, I don't think that's necessarily evidence you were present in year four. That's right. That's correct. And, in fact, the statute provides that if you leave for 180 days or more, it breaks your physical presence. We all know that somebody can leave the United States for two years during that period, come back, and then falsify documents so that the motive to prevent fraud is not really furthered by not also requiring that for the continuity of presence. In the end, Your Honor, Mr. Baca comes within the class of people that were protected by NACARA. I think it's completely unfair to not allow him to have his day in court. He should have been allowed to testify. He should have been allowed to present his witnesses. The judge pre-dermitted his application, and we asked his court to remand the case, particularly whereas here we have two circuit precedents that dictate that when an NTA hasn't been amended, we have a nondisputed fact that says when he came in. And this regulation, once again, was permissive, not necessarily mandatory in terms of what documents can be used to prove the commencement. I just ask you a question. Did the BIA have the benefit of these two decisions when it issued its argument? They did not. In fact, the BIA did not even address this argument in its decision. But did you make the argument? Yes, we did. Okay. But did the BIA have an opportunity to consider and construe these decisions in this context? Insofar as we briefed it, yes, they did have the opportunity. These cases. Not the cases, because Sanapien and Hakopian were issued after the BIA decision. I believe the BIA's decision in this case was dated February 2nd of 2007, and Hakopian is a 2008 decision, I believe, and Sanapien a 2009 decision. So, no, they have not had the opportunity. All right. Thank you, counsel. Thank you. May it please the Court. My name is Elizabeth Young, and I represent the government. The government will emphasize one point today during argument, and that is that the agency properly denied Mr. Bacchus' application for adjustment of status under NACARA because he failed to establish commencement of physical presence in the United States before December 1, 1995. All right. Well, the whole question here is how Sanapien and Hakopian apply to these facts. Do you think we should just remand it to the BIA to construe that in the first instance? There's a point being made that this case is distinguishable on its facts. There's also a point that I think is interesting being made, that the requirement in the regulation 245 uses may instead of shall. And I think those are both very good points. There's also, you can tell me, but there's no obvious attempt or anything I can see in the record that the government ever tried to, ever challenged or contested or tried to withdraw the entry date on the NTA. So do you think, given these facts that make this case slightly different, that those should just go back to the BIA since these are post-BIA decision? No, Your Honor. It's the government's position that Hakopian and Sanapien is not applicable to the instant case. And that is because what we're dealing with here is application for relief under NACARA and not application for relief under the silent statute. Let me ask you this, so I understand there are different statutes, but the principle of a judicial admission covers the waterfront. It can happen in any kind of a case. So why is it so special that it, why couldn't it happen here? Because, Your Honor, under the NACARA statute, it is not permissive. It requires that an alien submit an exclusive list of documentary submissions in order to prove commencement of physical presence. But if the government admits that, why do we need to bother with it? First, Your Honor, the government did not admit that he established. Okay. So tell me how you distinguish this on the facts from the cases like Hakopian and Sanapien. Your Honor, we would distinguish it on the facts in two respects. First, the government consistently contested Mr. Baca's stated date of entry. And second, they afforded. They never changed the date of entry in the NTA, which, I mean, you're skipping beyond, okay, so we have the judicial admission, and then the government's requiring him to prove this. But he shouldn't have to prove it once you have the judicial admission. And to go back to Judge Sedgwick's first question, the government, before the IJ, argued that the issuance of NTAs in the NACARA context is analogous to the asylum context. Now, you seem to be arguing something different. But you've already said that they were analogous. Your Honor, to address your first question, that is, in this case, the 2003 NTA would not meet the documentary submission requirements under NACARA. And that's because it was not issued on or before December 1, 1995. And the government consistently made this point before the immigration judge, that although the date of entry in the NTA stated it was 1994, for the purposes of NACARA, this did not establish Mr. Baca's stated date of entry. Well, but I don't understand that. Why? I mean, just because of the date. I mean, when you're talking about a judicial admission, that takes that issue out of the realm of disputed facts. So why does the fact that it's NACARA make a difference? Because, Your Honor, there is no disputed issue of fact about an entry date in NACARA. There is no – you can – the applicant cannot come forward with any relevant evidence to establish his date of entry like he could in the asylum context. To the contrary, under NACARA, you may only prove your entry date by submitting a contemporaneous government document. And if you look to the comments to the regulations that Attorney General – that Attorney What I'm understanding your argument to be here is you're saying that the facts here are – they're distinguishable from Hacopian and Sinnippian. Sinnippian? Or I don't know however we say it. And that if we were to extend it from asylum to NACARA, that it would essentially rewrite the statute. However, I think what Judge Ward wants to do, why shouldn't it go back and let the BIA look at those two cases, interpret it relative to, you know, say it does or it doesn't apply, and why if it doesn't apply, because that essentially it would have the effect of rewriting the plain language of NACARA, which is I think what you're saying. Yes, Your Honor. However, under NACARA, it is not possible for the government to concede as a matter of fact the entry date. The only inquiry under NACARA – Why is that? Why is it impossible for the government to just say, yeah, we admit that? Because, Your Honor, NACARA statute specifies – How the claimant has to prove it. Does the government have to put into it proof? Does the government have to do that? Can't a party admit something in any context? Well, in this context, I would respond to your question two ways. One, the government did not admit to the entry date. And instead consistently contested it and stated repeatedly that the entry date in the NTA – If you're right about that, then we don't have this issue. But assume for the sake of discussion that you're not. Is there any reason why NACARA is so special that the government couldn't admit the person was here at the appropriate time? Yes, Your Honor, because the statute states, quote, the alien shall demonstrate physical presence through the use of one of seven discrete activities. It does not appear to give the government the ability to admit that he came forward with that documentation. So the may language comes after the shall language. The shall language is as to seven, and then the may language follows if you can't do the shall. Your Honor, there actually is no may language, and this is a point that I would like to clarify. Okay. See how far there is. The regulation, there's may language. In the regulation, it provides that the individual can establish commencement of physical presence by either one of the seven ways identified in the statute, by a Form I-94 issued at the time of the alien's admission, or by a document dated on or before December 1, 1995. Now, the regulation clarifies that these government documents, for example, could be a document from a county hospital, tax records, something from a public school institution. So there is no may in terms of the documentary submissions in the regulation. It is a discrete list of three types of documents he must prove. So there is no discretion in terms of what document he can come forward with. Now, Mr. Baca admits that he does not have documentation dated on or before December 1, 1995. He doesn't have that despite being given three opportunities to apply for adjustment of status. Once in 1999, and he failed to appear for his interview, and so that was closed. Again in 2003, when that application was denied, CIS stated in bold the regulation that he come forward with a document dated on or before December 1, 1995. And again, he was given a third opportunity before the immigration judge to submit that document. Now, the immigration judge even gave him two years of continuances. Right, but if he doesn't have the ñ I mean, there's one way of proving this is the government documents. But under these two cases, another way is judicial estoppel. And so ñ and that's more of a ñ that's a procedural doctrine with evidentiary consequences that applies in every case, not just ñ you know, not just asylum. It applies across the board in civil litigation through all of these kinds of proceedings. So I understand what you're arguing. I just don't see that that is a distinction from ñ I mean, there is an overlay here of these other two cases, which ñ but anyway, it's at the intersection of this, and I'm not sure it's an extension at all because it's a doctrine that applies in every kind of proceeding, and it doesn't ñ it shouldn't matter in a car or asylum or whatever. Yes, Your Honor, but the government would also point out that in Hacopian, they characterized the NTA as a, quote, judicial complaint. And so allegations in a judicial complaint were binding on the government as admissions. However, I direct you to the rules of civil procedure at Rule 15. It also provides that if the government or if an individual fails to amend the pleadings and the party's consent to a trial of that issue, failure to amend the pleadings will not affect a trial of that issue. But the parties didn't consent. They argued throughout that this ñ you were ñ the government was judicially ñ stop. There was no consent that we're going to try this issue in this case. Your Honor ñ At least it. Excuse me for interrupting. That's okay. Mr. Baca's counsel admitted that the regulation was, quote, strict on his face and that he didn't have that documentation. In fact, he didn't bring up the NTA until the end of the hearing when the immigration judge raised the issue. What in the record ñ is there anything in the record that would show that Mr. Baca ever relied on the fact that he didn't have ñ you know, that he ñ there was any indication from the government that he didn't have to produce these? No, and that's an important distinction, Your Honor. In both Hacopian and Sinopean ñ if I may be able to conclude with your question. In both Hacopian and Sinopean, the court expressed a concern that the individual relied on the date of entry in the NTA, thought their application for asylum was timely, and then showed up at the hearing, and the government suddenly contested their date of entry. Here, Mr. Baca was very well aware of what documentation he needed, and the immigration judge even explored giving him another continuance to find the proper documentation, and he responded that it would take, quote, extraordinary measures for him to do so. And therefore, there is no evidence of reliance, making this case readily distinguishable from Hacopian and Sinopean. Is there any further questions? Thank you. Do you need 30 seconds to add anything? Do you need 30 seconds to add anything to this government-canceled maneuver? Why don't you just tell me what in the record says that your client thought he didn't have to produce these? Well, Your Honor, it... Well, he didn't want to, but what in the record, when did the government ever say you don't have to produce these? It seems to me out the gate they did. I think they did, Your Honor, but we insisted that he doesn't have to produce them. And just to clarify, even though the issue of the NTA wasn't raised until the merit hearing, it was in fact raised, and we wouldn't have made the argument if we hadn't relied on the fact of the NTA allegation and our admission thereof, we clearly believed we had the ability and the right to rely on that allegation to prove the commencement of physical presence. So this case is just like Sinopean and Hacopian in that regard. And again, I have to stress that it's clear that the regulation is permissive about those types of documents. And this circuit has recognized that people can qualify and prove their physical presence based on testimony alone. All right. Thank you, counsel. Thank you, Your Honor. Baca v. Holder will be submitted. Samoya Onuza v. Holder will be submitted. And we'll pick up Chris Escobar v. Holder.
judges: Sedwick, Wardlaw, Callahan